*302  F. Supp. 796*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED
JUL 3 1 1969
PATRICIA D. WILT
CLERK

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE MULTIDISTRICT PRIVATE CIVIL )
TREBLE DAMAGE ANTITRUST LITIGATION ) DOCKET NO. 18
INVOLVING IBM )

OPINION AND ORDER

———————————

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM,
WILLIAM H. BECKER, JOSEPH S. LORD, III, EDWIN A. ROBSON,
STANLEY A. WEIGEL, AND EDWARD WEINFELD, JUDGES OF THE PANEL

———————————

JOSEPH S. LORD, III, JUDGE OF THE PANEL

On February 3, 1969 International Business Machines
Corporation (hereinafter IBM or defendant) filed a motion with
the Panel for coordinated or consolidated pretrial proceedings
under 28 U.S.C. §1407 of the two cases brought against it. One
of these cases was filed by Control Data Corporation (hereinafter
Control Data or CDC) in the District of Minnesota and has already
been assigned to Judge Phillip Neville. The other case was
brought by Data Processing Financial and General Corporation
(hereinafter Data Processing or (DPF&G) in the Southern District
of New York. This case has not yet been assigned to a single
judge under Rule 2 of that court.

A hearing was had on IBM's motion in New York on

hardware and software but also has an extensive leasing program.
CDC also leases its equipment.  ADR and Programmatics supply
software packages in competition with IBM's packages.

After a two full hearings on the proposed transfers
the Panel has concluded that all the cases pending in the Southern
District of New York should be transferred to the District of
Minnesota for consolidated or coordinated pretrial proceedings
pursuant to 28 U.S.C. Section 1407.

CDC, DPF&G and IBM concede that their cases are ones
"involving one or more common questions of fact * * * pending in
different districts."  28 U.S.C. §1407(a).  ADR and Programmatics,
however, contend that they are concerned solely with software and
that any inquiry into the hardware phase of the computer industry
would be not germane to their cases.[1]/  We cannot agree.  The com-
puter industry, it is true, has the dual facets of hardware and
software.  However, it is conceded that the two are inextricably
intertwined, for the hardware is useless without the software
and vice versa.  Indeed, ADR's complaint, like those of CDC and
Data Processing, alleges a violation of Section 2 of the Sherman
Act, 15 U.S.C. §2, in which it specifically charges monopolization
of the hardware market.  To take another example of the commonality
of factual questions that will inevitably be explored, Program-

[1]/  Programmatics also argued that its case should not be trans-
ferred because it was seeking preliminary relief in the Southern
District of New York.  That relief, however, was denied on June
6, 1969.

-3-

matics' complaint alleges (Paragraph 12): "By means of its single-
price policy covering an IBM bundle of hardware and blocks of
software packages, IBM has contrived to hide the share of its
revenue properly attributable to hardware as against software."
Programmatics also charges a tying operation of hardware and
software.  Again, this complaint, like the complaints in the
other cases, alleges violations of Sections 1 and 2-/[2] of the
Sherman Act and Section 3 of the Clayton Act.  All four cases
raise the question of IBM's single-price policy for the hardware
and software.  There is no doubt that a core question, common to
all cases, is the relationship between hardware and software, -
a question that will involve massive discovery, not only nation-
wide, but worldwide.

These cases will require the exploration in depth of
wide fields of both technical and economic data.  The inquiry
will perforce be largely identical in all cases-/[3] and will entail
the production of a multitude of the same documents.  In the tech-
nical field, in addition to the technology itself, rulings as to
trade secret problems will be required and should be coordinated.
The economic data will include IBM's power and position within
the industry, the ability of other manufacturers, lessors and
suppliers to enter the industry and compete, identification and
definition of the market, the nature of the industry, and the

_____

2/ 15 U.S.C. §§ 1 and 2.
3/ For example, at least the first 48 pages of both CDC's and
DPF&G's interrogatories to defendant are identical.

complex structure of the market involving manufacturers and
suppliers of hardware, software and peripheral equipment, as
well as leasing companies and maintenance specialists.[4]  We are
convinced that the full development of the evidence will involve
extensive discovery, most of which will be both complex and com-
mon to all cases.  It is obvious to us that these law suits
have massive dimensions.  We are convinced that the inevitable
extent and complexity of projected discovery qualifies these
cases as "exceptional" so that transfer and consolidation is
required.

From the legislative history of Section 1407, it is
clear that although these cases at present are relatively few
in number, they represent one type of litigation that the sec-
tion was designed to cover.

> "If only one question of fact is common to two
> or three cases pending in different districts
> there probably will be no order for transfer,
> since it is doubtful that transfer would enhance
> the convenience of parties and witnesses or pro-
> mote judicial efficiency.  It is possible, how-
> ever, that a few exceptional cases may share
> unusually complex questions of fact, or that
> many complex cases may share a few questions of
> fact.  In either of these instances substantial
> benefit may accrue to courts and litigants
> through consolidated or coordinated pretrial
> proceedings."  (Senate Report 454 to accompany
> F159, pages 4 & 5)  (Emphasis added)

---

4/ At the hearing counsel for IBM estimated that there were
approximately 80 manufacturers of computers, 60 manufacturers
of peripheral equipment, hundreds of software houses and about
150 leasing companies.

So far as any dissimilarities exist among the cases, discovery relating to non-common questions of fact can be conducted following remand if the transferee judge concludes that such procedure would be in the best interests of justice.

We have before us also the case of Datastation of Los Angeles, Inc. v. IBM, et al., Central District of California, Civ. No. 68-1232-HP, which case was considered for possible transfer on the initiative of the Panel. None of the parties favor the inclusion of this case in coordinated or consolidated pretrial proceedings. IBM has already been dismissed and the case is close to being ready for trial as to the remaining defendant, which is not before us. That case will not be transferred.

ADR and Programmatics argue that transfer of their cases will result in serious inconvenience to the transferred plaintiffs and their witnesses. Some inconvenience to someone is inevitable when cases are transferred, but the Panel "must consider multiple litigation as a whole in the light of the law." In Re Childrens' Book Cases, 297 F.Supp. 385,386 (JPML, 1968). However, there is no need to inconvenience witnesses since depositions can and should be taken at locations convenient to those witnesses.-/ It is true that there may be some additional expenses and inconvenience to counsel for the New York plaintiffs since they will be required to travel to Minnesota to attend

---

5/  If requested, the Panel may appoint deposition judges to supervise depositions taken in districts other than the transferee district.  28 U.S.C. §1407(b).

pretrial conferences or will have to retain local counsel for that purpose, but this expense and inconvenience will be more than offset by savings from and convenience of coordinated or consolidated pretrial proceedings directed by the transferee judge.  _Cf_. _In re Antibiotic Drug Litigation_,   295  F.Supp. 1402 (JPML, 1968).

In litigation of this type where only a few cases are pending in each of two district courts the choice of a trans- feree forum is not an easy one.  Data Processing urges the Southern District of New York for designation as the transferee forum for two reasons: (1) the government civil action has been filed in that district[6]/ and (2) its corporate officers and those of the common defendant are located in that district.  And while it is true that the largest single concentration of docu- ments is probably in New York, the total number of documents scattered elsewhere throughout the country greatly exceeds the number in New York, and a majority of CDC's documents are in or near St. Paul, Minnesota.  While these factors are important ones, they are not here controlling.  We think that the just and efficient conduct of these actions will be best furthered by their transfer to a district wherein the assigned judge is al- ready familiar with the proceedings and will be able to insure

---

6/ This case is statutorily excluded from potential consolidation under §1407.

-7-

March 31, 1969.  Thereafter, **and before** the promulgation of the
Panel's opinion, a third action **against** IBM was filed in the
Southern District of New York on April 22, 1969 by Applied Data
Research, Inc. (hereinafter ADR), and on May 21, 1969 Program-
matics Incorporated also sued IBM in the same District.  Neither
of these cases has been **assigned** to a **single** judge.  In view of
the additional actions that had been commenced, we ordered re-
hearing, which was had in Denver, Colorado, on May 23, 1969.

While conceding the necessity for some type of coordi-
nation to avoid duplication in the pretrial of these cases, CDC
strongly opposes transfer of its case to the Southern District
of New York.  Although Data Processing acknowledges substantial
common questions of fact between the two cases, it takes "no
position" on whether there should be a transfer for coordination
or consolidation under §1407.  It urges, however, that if there
is to be a transfer it should be to the Southern District of
New York.  While strongly supporting transfer, IBM has not speci-
fied its choice for a transferee forum.  ADR and Programmatics
oppose any form of transfer for consolidation or coordination.

Control Data is primarily a manufacturer of electronic
data processing equipment or hardware and the procedures and
programs necessary to utilize this complex equipment or software.
Data Processing does not manufacture computers but its primary
business is the leasing of computers and associated software.
IBM competes with both as it not only manufactures and sells

- 2 -

that consolidated pretrial proceedings are conducted fairly and expeditiously.  See *In re Childrens' Book Cases*, 297 F. Supp. 385(JPML, 1968).  Judge Philip  Neville conducted his first pretrial conference in the Control Data case last December and discovery has progressed under his careful supervision since that time.  He is willing to undertake the consolidated pretrial proceedings of these two cases and the Chief Judge of the district consented to the proposed assignment.

Attention has been invited to the notice of appeal[7/] filed on July 17, 1969 by the plaintiffs in *Programmatics, Inc. v. International Business Machines Corporation*.  Under the circumstances disclosed by the record in this case, delay of its transfer is not warranted.

IT IS THEREFORE ORDERED, that the treble damage action pending in districts other than the District of Minnesota and listed in Schedule A attached hereto be, and they are hereby, transferred under Section 1407 of Title 28, United States Code, to the United States District Court for the District of Minnesota and assigned to the Honorable Philip  Neville, all with the consent in writing of the transferee court attached hereto.

FOR THE PANEL

Member

---

7/ The Notice of Appeal reads as follows:

"Notice is hereby given that Programmatics, Incorporated, the plaintiff above named, hereby appeals to the Court of Appeals for the Second Circuit from that part of the order denying plaintiff's motion for a preliminary injunction, entered in this action on the 18th day of June, 1969."

IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MINNESOTA


MULTIDISTRICT PRIVATE CIVIL TREBLE DAMAGE ANTITRUST LITIGATION INVOLVING IBM


CONSENT OF TRANSFEREE COURT


The United States District Court for the District of Minnesota does hereby consent to the assignment of cases involved in the above-captioned litigation to the Honorable Philip Neville for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. §1407.

Edward J. Devitt
Chief Judge

Date: April 24, 1969

RECEIVED

SCHEDULE A

## DISTRICT OF MINNESOTA

1.  Control Data Corp. v. International          Civil Action
    Business Machines Corp.                      No. 3-68-312

## SOUTHERN DISTRICT OF NEW YORK

2.  Data Processing Financial & General         Civil Action
    Corp. v. International Business              No. 69 Civ. 19
    Machines Corp.

3.  Applied Data Research, Inc. v. Inter-        Civil Action
    national Business Machines, Corp.            No. 69 Civ. 1682

4.  Programmatics, Inc. v. International         Civil Action
    Business Machines, Corp.                     No. 69 Civ. 2185

*314 F.SUPP 1253*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

JUL 1 0 1970

PATRICIA D. HOWARD
CLERK OF THE PANEL

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

MULTIDISTRICT PRIVATE CIVIL TREBLE )
DAMAGE ANTITRUST LITIGATION INVOLVING )
IBM )
)
*Howard S. Levin v. IBM & Levin-Townsend* )
*Computer Corporation*, S.D. New York, )
Civil Action No. 70 Civ. 1654 )

DOCKET NO. 18

---

ORDER

---

BEFORE ALFRED P. MURRAH, CHAIRMAN AND JOHN MINOR WISDOM,
EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH S. LORD, III,
AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

---

PER CURIAM

On April 23, 1970 the plaintiff filed the above action
in the Southern District of New York.  On May 1, 1970 we
issued a "conditional transfer order" transferring it to
the District of Minnesota for coordinated or consolidated
pretrial proceedings with other related actions filed in or
transferred to that court.  See *In re IBM Litigation*,
302 F.Supp. 796 (JPML  1969).  The plaintiff filed a timely
notice of opposition to the transfer, motion to vacate the
conditional transfer order and brief in support thereof.  At
his request a hearing was held in Washington, D. C. on June
26, 1970.

While not abandoning his opposition to eventual transfer
of this case to Minnesota, counsel for the plaintiff pressed
most vigorously at the hearing for a thirty to sixty day
delay apparently to afford Mr. Levin and Levin-Townsend
Computer Corporation an opportunity to resolve their differences
and to present a unified front against the major defendant - IBM.
We were not persuaded however, that there was any substantial
basis for delaying a decision on this motion and in view of
the major pretrial conference scheduled for July 31, 1970 it
seems important that all parties, including Mr. Levin, know
by that date whether or not this action is going to be included
in coordinated and consolidated pretrial proceedings.

Turning to the merits of the opposition to the transfer
we do not believe that this action is sufficiently different
from the actions previously transferred to the District of
Minnesota to cause it to be excluded from coordinated or
consolidated pretrial proceedings.  It is of course true that
this action involved an additional factor, the intercompany
dispute between Mr. Levin and the present directors of the
Levin-Townsend Computer Corporation but it is undisputed that
the antitrust charges contained in the complaint are virtually
identical with those contained in actions previously transferred
to Minnesota.  There can be no doubt that much of the discovery
will be common to all cases and that the convenience of these
parties and their witnesses as well as the just and efficient
conduct of this entire litigation would be furthered by

- 3 -

transferring this case to the District of Minnesota and
including it in coordinated and consolidated pretrial proceedings.
If it later develops that there are claims between Mr. Levin
and the Levin-Townsend Computer Company which are unrelated
to the other actions, they can be separated by the transferee
judge and if appropriate, remanded to the Southern District
of New York.

IT IS THEREFORE ORDERED that the motion to vacate the
conditional transfer order of May 1, 1970 is overruled; the
stay of that order is hereby lifted and the Clerk of the Panel
is directed to transmit that order forthwith to the Clerk
of the District of Minnesota for filing and distribution
pursuant to Section 1407.

*316 F. SUPP 976*

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

AUG 1 3 1970

PATRICIA D. HOWARD
CLERK OF THE PANEL

MULTIDISTRICT PRIVATE CIVIL TREBLE ) 
DAMAGE ANTITRUST LITIGATION INVOLVING )
IBM )
)   DOCKET NO. 18
*Computer Graphics Associates, Inc. v.* )
*IBM*, District of Columbia, Civil )
Action No. 1658-70 )



OPINION AND ORDER

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH
S. LORD, III, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

PER CURIAM

On June 19, 1970, a conditional transfer order was
entered directing the transfer of this action to the District
of Minnesota for coordinated or consolidated pretrial pro-
ceedings with apparently related actions filed in or trans-
ferred to that Court. See, *In re IBM Litigation*, 302 F.Supp.
796 (JPML 1969) and *In re IBM Litigation*, _____F.Supp._____
(JPML, July 10, 1970). Data Processing Financial and Control
Data, plaintiffs in two of the actions involved in this
multidistrict litigation, oppose transfer and move to vacate
the conditional order. Computer Graphics filed a response to
the motion urging transfer; IBM has neither supported nor
opposed the transfer. No hearing was requested by the parties.

- 2 -

Although Computer Graphics has not raised the issue, we note initially that Data Processing Financial and Control Data have standing to oppose transfer of Computer Graphics' action to the District of Minnesota.  These plaintiffs, like the common defendant, have an interest in seeing that only actions involving common fact questions are transferred for Section 1407 pretrial proceedings.

Computer Graphics' action alleges antitrust and common law violations arising from IBM's marketing of its MT/ST (Magnetic Tape Selectric Typewriter) and MT/SC (Magnetic Tape Selectric Composer) while the actions transferred to or filed in Minnesota allege similar violations arising from IBM's separate and "package" marketing of computer hardware, software and related services.  The objecting plaintiffs point out that the MT/ST is functionally different from the electronic data processing equipment involved in the other actions and is manufactured and marketed by a different division than the electronic data processing equipment.  No mention is made of the MT/SC but Computer Graphics' complaint suggests that the same arguments apply to it.  Consequently, the objecting plaintiffs urge that their actions and Computer Graphics' action involve no common areas of discovery, *i.e.*, no common documents to be examined, interrogatories to be answered, or individuals to be deposed.

Computer Graphics admits that discovery in the other actions would be seriously impeded by additional dis-

covery involving IBM's typewriter business. But it contends that the MT/ST and MT/SC can be used as computer input equipment and that the actions thus involve common questions of fact concerning computer systems manufactured by IBM and violation of a 1956 Consent Decree entered against IBM.

Although Computer Graphics has cast its complaint in terms of antitrust violations in the electronic data processing industry, the capacity of the MT/ST and MT/SC as computer input devices is irrelevant to Computer Graphics' action and is relied on only as an explanation for IBM's alleged acts. Computer Graphics has used its machines only for the typesetting and typewriting functions for which they were intended and any antitrust questions raised by it concern IBM's monopolization of this aspect of the office machine market. No question is raised concerning IBM's alleged tie-in of computer software with computer hardware sales, the apparent crux of the Minnesota actions. We conclude that, in spite of a few common fact questions resulting from the common defendant, the just and efficient conduct of the actions will not be promoted by transfer of Computer Graphics action. See *In re Multidistrict Civil Antitrust Litigation Involving Photocopy Paper*, 305 F.Supp. 60 (JPML 1969). Accordingly, the motion of Data Processing Financial and Control Data is granted and it is ordered that the conditional transfer order be vacated.

*319    F. SUPP. 926*

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

NOV 27 1970

PATRICIA D. HOWARD
CLERK OF THE PANEL

MULTIDISTRICT PRIVATE CIVIL TREBLE          )
DAMAGE ANTITRUST LITIGATION INVOLVING )
IBM                                                          )
                                                               )
*GREYHOUND COMPUTER CORP., INC. V.*       )
*IBM,* N.D. Illinois, Civil Action              )
   No. 70C 1944                                       )
*GREYHOUND COMPUTER CORP., INC. V.*       )          DOCKET NO. 18
*IBM,* N.D. Illinois, Civil Action              )
   No. 70C 2203                                       )

<u>OPINION AND ORDER</u>

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM, EDWARD
WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH S. LORD, III*,
AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

PER CURIAM

On July 31, 1969, the Panel ordered that three antitrust
actions against IBM in the Southern District of New York be
transferred to the District of Minnesota for coordinated or
consolidated pretrial proceedings with a similar action filed
there. *In re IBM Antitrust Litigation,* 302 F. Supp. 796 (JPML
1969). A later *tag-along* case was also transferred to
Minnesota in July, 1970, *In re IBM Antitrust Litigation,* 314
F. Supp. 1253 (JPML 1970).[1]/ After slightly more than a year
of pretrial discovery in that district before the Honorable
Philip Neville, settlements were reached in all of the actions
except the one originally filed there by Control Data Corporation
(CDC).



---

\*    Judge Joseph S. Lord, III was unable to attend the hearing
in this matter but with the consent of all parties participated
in this decision.

1/   A conditional transfer order in a second *tag-along* case
was vacated in August, 1970, *In re IBM Antitrust Litigation,*
__F. Supp.__ (JPML Aug. 13, 1970).

2

While discovery was being conducted in Minnesota, Grey-hound Computer Corp. commenced an action in Illinois state court, charging IBM with breach of contract, fraud and unfair competition.  IBM removed this action to federal court, but it was remanded upon Greyhound's representation that it did not intend to sue IBM under the federal antitrust laws.  In July, 1970, Greyhound amended its complaint to allege a violation of the antitrust statutes, although not specifically invoking the federal statutes and IBM again removed that action.  Greyhound then filed a second action in federal court, expressly alleging IBM's violation of Section 2 of the Sherman Act, 15 U.S.C. §2.

On September 11, 1970 the Panel ordered the parties to show cause why these two actions should not be transferred to Minnesota for coordinated or consolidated pretrial proceedings with CDC's action pending there.  After consideration of the parties' responses and the arguments presented at a hearing on the matter, the Panel has concluded that these actions meet the criteria of Section 1407 and that coordinated or consolidated pretrial proceedings should be held in the District of Minnesota before Judge Neville.

CDC is a manufacturer and distributor of its own line of computers in competition with IBM, while Greyhound purchases IBM equipment which it then leases to its customers.  Because of their different activities the plaintiffs argue that their anti-trust actions against their common competitor, IBM, raise few common fact questions.  We find this argument no more persuasive now than at the time of our prior transfer orders, which encompassed

3

actions by a computer hardware manufacturer (CDC), lessors of
hardware and software, and suppliers of software only.  Like the
earlier cases, the present actions involve common questions of
fact concerning IBM's monopolization of the computer field and
"will require the exploration in depth of wide fields of both
technical and economic data."  302 F. Supp. at 798.  And now, as
at the time of the original transfer, we think "the inevitable
extent and complexity of projected discovery qualifies these
cases as 'exceptional' so that transfer and consolidation is
required."  302 F. Supp. at 799.

CDC and Greyhound both urge that their actions are in dif-
ferent phases of discovery and that many of the remaining areas
of discovery lack commonality.  These problems are more properly
addressed to the transferee judge.  We are confident that the
status of discovery efforts can be equalized in these actions
and to the extent that remaining discovery efforts will center
on matters of interest to only one plaintiff, coordination of
pretrial proceedings to avoid duplicative discovery may be more
appropriate than consolidation.  Judge Neville is familiar with
the problems arising from this type of litigation and we are
certain that discovery will proceed efficiently under his
direction.

IT IS THEREFORE ORDERED that the actions pending in the
Northern District of Illinois be, and the same hereby are, trans-
ferred under Section 1407 of Title 28, United States Code, to the
United States District Court for the District of Minnesota and,
with the prior consent of that court, assigned to the Honorable

4

Philip Neville for coordinated or consolidated pretrial proce-
edings with *Control Data Corp. v. International Business Machines
Corp.*, Civil Action No. 64 Civ. 19, pending in that district.

328 F Supp 509

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

JUN 23 1971

PATRICK D. HOWARD
CLERK OF THE PANEL

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IBM ANTITRUST LITIGATION

*Data Research Corp., et al. v. IBM,* )
Southern District of New York, )
Civil Action No. 71 Civ. 1451 )
                                    )         DOCKET NO. 18
*IBM v. VIP Systems, et al.,* District )
of Columbia, Civil Action No. 828-70 )

OPINION AND ORDER
_____

BEFORE ALFRED P. MURRAH, CHAIRMAN AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER AND
STANLEY A. WEIGEL, JUDGES OF THE PANEL
_____

PER CURIAM

Since it appeared to the Clerk of the Panel that
each of the above actions shared common questions of fact
with the actions previously transferred to the District of
Minnesota and assigned to Judge Phillip Neville for coordinated
or consolidated pretrial proceedings under 28 U.S.C. §1407, a
"Conditional Transfer Order" was entered transferring both
actions to the District of Minnesota on the basis of the
prior hearings and for the reasons expressed in previous opinions
and orders of the Panel. *In re IBM Antitrust Litigation,* 319
F. Supp. 926 (JPML 1970), 314 F. Supp. 1253 (JPML 1970), 302 F.
Supp. 796 (JPML 1969). Control Data Corporation, the plain-
tiff in the only originally transferred action still pending
in Minnesota, filed a timely notice of opposition to the
transfers and a motion to vacate both transfer orders.[1]

_____
[1]     *Control Data* did not appear at the hearing but relied
on the pleadings filed by it in these and other related cases.

- 2 -

Data Research Corporation joined in the motion opposing trans-
fer of its case to the District of Minnesota.  VIP Systems
did not file a response to the motion but did, at oral argu-
ment, oppose the transfer of its case to the District of
Minnesota.  IBM strongly supports the transfer of the *Data
Research Case* to Minnesota and would support the transfer of
the *VIP Systems Case* if the antitrust counter-claim is to be
seriously prosecuted.

The parties do not disagree that these two cases should
be transferred to Minnesota for coordinated or consolidated
pretrial proceedings if they are going to involve substantial
discovery which is duplicative of that going forward in cases
now in Minnesota but they strongly disagree as to whether or
not such duplicative discovery is inevitable or even probable.

The *Control Data Case* is very broad as the plaintiff,
in essence, alleges that IBM has monopolized the entire "computer
industry", both domestically and internationally, including
submarkets in hardware, software, and auxiliary equipment.  The
*Data Research Case* on the other hand involves a very limited
type of auxiliary equipment, specifically a "punch verifier
adapter" and the *VIP Case* involves only "electronic text edit-
ing services", a rather specialized computer application.

To the extent that VIP and Data Research claim that IBM
has been able to monopolize *these* submarkets because of its
dominant  position in the computer industry as a whole, there

- 3 -

may be some overlapping questions of fact between their cases
and those now in Minnesota.  However Control Data claims that
it has been damaged by IBM's alleged monopolization of the
entire computer industry, including hardware, software and
auxiliary equipment, while Data Research's damage is based
on an asserted monopoly of "the narrow market for card punch
machines and card punch verifiers."  VIP presents a similarly
limited contention.  Thus, while these parties all charge IBM
with maintaining a broadly defined monopoly, the emphasis of
these two cases and the *Control Data Case* are clearly different
and the scope and breadth of discovery are likely to be substan-
tially different.

　　　The *IBM Litigation* being processed in Minnesota is ex-
tremely complex.  It has been said that hundreds of millions
of documents will be produced and that discovery may take
several years.  We would be reluctant to require any party whose
*necessary* discovery is much more limited to take part in this
massive discovery program.  Of course, we would be equally re-
luctant to subject IBM to unlimited overlapping discovery de-
mands made by different parties in different courts.  Since VIP
and Data Research deny that any degree of duplicitous discovery
is likely to occur, we think that the best course is to decline
to transfer these cases at this time without prejudice to the
right of any party to seek transfer if it becomes certain that
extensive duplicative disocvery will be required.

　　　TRANSFER DENIED.

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE IBM ANTITRUST LITIGATION

The Telex Corp., et al, v.      )
International Business Machines, )          DOCKET NO. 18
Inc., N.D. Oklahoma, Civil Action )
No. 72 C 18                      )

### OPINION AND ORDER

BEFORE ALFRED P. MURRAH, CHAIRMAN AND JOHN MINOR WISDOM, EDWARD
WEINFELD, EDWIN A. ROBSON*, WILLIAM H. BECKER, JOSEPH S. LORD III*,
AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

PER CURIAM

The Telex Corporation brought this suit against IBM in the

Northern District of Oklahoma.  The Panel issued an order to show

cause why this action should not be transferred to the District of

Minnesota and assigned to the Honorable Philip Neville for coor-

dinated or consolidated pretrial proceedings with two other anti-

trust actions against IBM.  IBM and Greyhound Computer Corporation 

favor transfer; Telex and Control Data Corporation are

opposed.  On the basis of the papers submitted by the parties and

the hearing held, we hold that transfer of the Telex action will

serve the convenience of the parties and witnesses and will promote

the just and efficient conduct of the litigation.

---

\*    Although Judges Robson and Lord were not present at the
hearing, they have, with the consent of all parties, participated
in this decision.

Originally five cases were consolidated with the Control Data case in the District of Minnesota for coordinated pretrial proceedings before Judge Neville. [1]   Four of those cases were settled and dismissed; only the Greyhound and Control Data cases remain before the court.  And we are informed that Judge Neville is considering the transfer of the Greyhound action at the conclusion of pretrial proceedings, which are near completion, to the District of Arizona for trial in May of this year.

In its complaint against IBM, Telex alleges violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§1 and 2) and Section 3 of the Clayton Act (15 U.S.C. §14).  Telex is engaged in  manufacturing   and selling or leasing   peripheral devices [2] to be attached to an IBM central processing unit. [3]   Thus Telex

---

[1]   See In re IBM Antitrust Litigation, 302 F. Supp. 796 (J.P.M.L. 1969); 314 F. Supp. 1253 (J.P.M.L. 1970); 319 F. Supp. 926 (J.P.M.L. 1970).

[2]   The Telex complaint defines "peripheral devices" as various items "such as tape drives, direct access disc storage units, drum storage units, printers, terminals, and memories used as accessories for the central processing unit for input, output and storage."

[3]   The Telex complaint defines a "central processing unit" as "(a) machine, or group of interconnected machines, possessing input, storage, computing, control, and output functions and which uses electronic circuitry...to perform arithmetic and/or logical operations automatically by means of programmed instructions.  When programmed, 'the' equipment is capable of accepting information or 'input data,' processing the data according to predetermined instructions, and then providing an output of its processes in a usable form."

affords purchasers of an IBM central processing unit the oppor-
tunity to obtain peripheral devices for attachment to their IBM
central processor from someone other than IBM.  Telex claims that
its devices possess functional characteristics identical to the
IBM peripheral devices, but utilize superior technology and pro-
vide superior performance in processing electronic data.  Telex
alleges that certain acts and practices of IBM violate the anti-
trust laws and have deprived Telex of the opportunity to compete
effectively in the market of supplying peripheral devices specifi-
cally designed for attachment to an IBM central processing unit.

IBM favors transfer of the Telex case because it feels that
transfer will expedite the pretrial proceedings of the action and
will assure the opportunity for an early trial.  IBM argues that
all parties will benefit from the coordinated discovery program
relating to IBM's defense on the relevant market issues, which
it alleges is, to a great extent, the same in both the Telex and
Control Data actions.  Greyhound does not object to the consolida-
tion of Telex for pretrial proceedings.

At the Panel hearing Telex supported transfer of its action
for participation in the coordinated discovery program in
Minnesota.  It argued that, notwithstanding the fact that the
relevant market alleged in its complaint is more limited than
that alleged in the Control Data suit, common questions of fact
are presented because the Control Data suit also involves the

- 4 -

substitution of peripheral equipment for IBM peripheral devices.
Telex claimed that the majority of the discovery it needs has
already been completed in Minnesota and that with some addi-
tional discovery it can be ready for an early trial. Subsequent
to the Panel hearing Telex filed an additional action against IBM
in the Northern District of Oklahoma seeking a temporary restraining
order and a preliminary injunction to halt and enjoin new marketing
and leasing practices instituted by IBM subsequent to the filing
of the first Telex action. Telex now withdraws its support and
requests the Panel to deny transfer of its action to Minnesota.[4]

Control Data opposes the transfer of the Telex action to
Minnesota. It strongly urges that transfer will result in the
delay of its case and impede its attempt to get to trial in early
1973. It argues that the issues of its case are more complex and
much broader than those in Telex and that transfer will force Judge
Neville to adopt and supervise an independent discovery program
custom tailored to fit Telex's needs. Control Data also asserts
that the Telex action is analogous to the Data Research action,
which the Panel earlier declined to transfer,[5] and urges that
our reasoning in that decision is equally applicable to the Telex
situation.

---

[4] We hold that Telex's sudden change of heart does not affect
our decision to transfer its case to Minnesota for coordinated
or consolidated pretrial proceedings and therefore its request
is denied.
[5] In re IBM Antitrust Litigation, 328 F. Supp. 509 (J.P.M.L.
1971)

We cannot accept Control Data's assertion that our earlier decision regarding Data Research is controlling.  The relevant market alleged in the Data Research case was limited to the narrow market for card punch machines and card punch verifiers. And all responding parties in that matter opposed transfer to the District of Minnesota, except IBM.  We found that because of the different emphasis in the Data Research case and the actions consolidated for pretrial proceedings there was little likelihood of duplicitous discovery, and we denied transfer.

That same reasoning cannot be applied to the Telex case. The relevant market alleged by Telex involves the market for peripheral computer devices that can replace IBM peripheral equipment attached to an IBM central processing unit and is a much broader market than that alleged by Data Research.  Control Data competes in the market alleged by Telex and has also alleged monopolistic practices by IBM in the peripheral device market. To this extent at least there clearly will be some degree of duplicitous discovery absent transfer.  As another example of the commonality of factual questions and the potential for over-lapping discovery that exists, both the Telex and Control Data actions will involve discovery of IBM's alleged monopolization of the "hardware" and "software" computer fields and the effect thereof on their respective competitive positions.   Cf.  In re IBM Antitrust Litigation, 302 F. Supp. 796 (J.P.M.L. 1969).

We find that the Telex suit shares common questions of fact with the Control Data case and that transfer will prevent incon-sistent pretrial rulings and avoid overlapping discovery of

- 6 -

complex technical economic data.  Although it is true, as Control
Data claims, that a denial of transfer would not necessarily pre-
clude Telex from obtaining the discovery that has already trans-
pired, we strongly believe that it would greatly simplify the just
and efficient conduct of the litigation if the common discovery
remaining were coordinated and supervised by a single judge.  And
transfer will enable Telex to participate in the continuing docu-
ment production and in the scheduling of depositions.  We are
aware of the difficulties created by transfer in coordinating
the discovery programs of individual litigants, but we are con-
vinced that those difficulties are outweighed by the benefits of
centralized management of pretrial proceedings.  See  In re Koratron
Patent Litigation, 327 F. Supp. 559 (J.P.M.L. 1971).

Both Telex and IBM have expressed a desire for an early
trial.  We believe that an early trial date can best be achieved,
at the convenience of the parties and witnesses, by having Telex
participate in a coordinated discovery program supervised by Judge
Neville, who has prepared the Greyhound action for trial without
substantially delaying Control Data's march toward trial.  The
same can be done with Telex.

IT IS THEREFORE ORDERED that the action, Telex Corp., et al.
v. International Business Machines, Inc., N.D. Oklahoma, Civil
Action No. 72 C 18,    be, and the same hereby is, transferred
to the District of Minnesota and, with the consent of that court,
assigned to the Honorable Philip Neville for coordinated or consoli-
dated pretrial proceedings pursuant to 28 U.S.C. §1407.